# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

---

KITCHEN & ASSOCIATES
SERVICES, INC.,

          Plaintiff,

   v.

HAVEN CAMPUS COMMUNITIES,

          Defendant.

1:19-cv-10995-NLH-JS

**OPINION**

---

**APPEARANCES:**

STEPHEN MCNALLY
CHIUMENTO MCNALLY, LLC
ONE ECHELON PLAZA
227 LAUREL ROAD, SUITE 100
VOORHEES, NEW JERSEY 08043

   *On behalf of Plaintiff.*

MATTHEW S. ROGERS
123 PROSPECT STREET
RIDGEWOOD, NEW JERSEY 07541

   *On behalf of Defendant.*

**<u>HILLMAN</u>, District Judge**

In this action, Plaintiff alleges Defendant failed to pay for various building design, architectural, and engineering services Plaintiff provided pursuant the parties' contractual agreements. There are three motions currently pending before the Court: (1) Defendant's motion to dismiss Plaintiff's Complaint for want of personal jurisdiction (ECF No. 7); (2)

Defendant's motion captioned as one for an extension of time to file its motion to dismiss (ECF No. 8); and (3) Defendant's motion to set aside the Clerk's entry of default entered against it (ECF No. 21).[1]  For the reasons discussed below, Defendant's motion to dismiss will be denied and Defendant's motions to vacate entry of default and for an extension of time to file will be granted.

**BACKGROUND**

Because Defendant's motion to dismiss tests whether this Court may properly exercise personal jurisdiction over it, we take our recitation of the facts from Plaintiff's Complaint (the "Complaint") and supplemental evidence submitted by the parties as relevant to the question of whether this Court may properly exercise personal jurisdiction over Defendant.

The parties appear to be involved in the business of designing and constructing student campus housing across the country, Plaintiff operating out of New Jersey and Defendant out of Georgia.  After meeting at an industry conference in Austin, Texas sometime during 2014, the parties entered into a series of contracts in which Plaintiff Kitchen & Associates Services, Inc.

---

[1] A fourth motion, Defendant's motion for leave to appear *pro hac vice* (ECF No. 27) remains pending before the Court and will be addressed by Magistrate Judge Schneider in due course.

("Plaintiff") agreed to provide Defendant Haven Campus Communities ("Defendant") with interior design, architectural, and engineering services relating to housing projects at various universities. (ECF No. 1-1 ("Comp.") at ¶3); (ECF No. 18-1 ("Keyser Cert.") at ¶4). Plaintiff alleges that Defendant failed to pay for services rendered, in breach of the parties' contractual relationship, and now owes Plaintiff nearly $600,000. (Comp. at ¶¶7, 10).

Plaintiff relies on the declaration of Roger Keyser, Principal and Director of Student Housing for Plaintiff ("Keyser") in clarifying the scope and substance of the parties' relationship. Defendant relies on the affidavit of Bryan Boyles, one of Defendant's employees, in support of its position. The Court considers both of these documents in deciding the present motions.

Keyser explains that after the parties' initial meeting in Texas, on May 22, 2014, Defendant contacted Plaintiff by email about formalizing a business relationship. (Keyser Cert. at ¶¶5, 9). Talks apparently centered around student housing projects for various universities in Indiana, Texas, North

Carolina, and Florida.[2] (Keyser Cert. at ¶¶4, 12); (ECF No. 7-1 ("Boyle Aff.") at ¶5). Contracts were ultimately executed, and the executed drafts exchanged via email. (Keyser Cert. at ¶¶16, 18). The Court has before it one of these executed agreements and notes that Plaintiff's New Jersey address appears on the first page of the document. (Keyser Cert., Ex. F) (executed proposal-agreement relating to "Indiana University-Purdue University" project).

Because Plaintiff is located in New Jersey and Defendant is located in Georgia, much of the work was to be conducted via email and telephone conference. (Keyser Cert. at ¶13). Keyser explains that the work to be completed – largely involving designs for construction projects – was particularly suitable for electronic transmission between the parties. (Id. at ¶13). After Plaintiff transmitted its work product, Defendant would "suggest revisions via telephone conferences and emails" until all details were finalized.[3] (Id.). Keyser certifies that the

---

[2] Plaintiff represents that the parties in fact collaborated on four or five projects but contemplated engaging in more than thirty separate projects. (Keyser Cert. at ¶11).

[3] Emails attached as exhibits to Keyser's declaration indicate that the parties transmitted drafts of relevant proposals and contracts via email and exchanged all revisions via email as well. (Keyser Cert., Ex. E) (emails evincing exchange of revised proposals). For example, a series of July 2016 communications reflect the negotiation and exchange of proposals relating to a "Fayetteville Student Housing" project. See

4

parties exchanged thousands of emails during the course of their relationship. (Id. at ¶14). According to Keyser, Defendant was "attracted to the idea of working with [Plaintiff] because [it] could perform work electronically with minimal, if any, face-to-face interaction."[4] (Id. at ¶7).

Once work was completed, Defendant would generally mail payment via check to Plaintiff's office in Collingswood, New Jersey. (Keyser Cert. at ¶21). The parties now present a dispute relating to the alleged non-payment of services rendered.

## **PROCEDURAL HISTORY**

On April 24, 2019, Defendant removed the present action to this Court. (ECF No. 1). After doing so, however, Defendant failed to file a timely answer or pre-answer motion, and Plaintiff moved for entry of default pursuant to Rule 55(b)(1) of the Federal Rules of Civil Procedure. (ECF No. 5). The Clerk granted Plaintiff's request on May 20, 2019. On May 23, 2019, after default was entered and without moving to have entry

---

(Id.). The record contains similar communications for a "Charlotte Contract" in October of 2016, although it is possible these projects were related. (Id.). These communications appear to span at least several months in length. See (Id.) (emails from July 2016 through October 2016).

[4] Plaintiff admits, however, that Defendant never visited New Jersey in relation to their business endeavors.

of default vacated, Defendant filed two motions: a motion to dismiss the Complaint (ECF No. 7) and a motion characterized as one for an extension of time to file (ECF No. 8). On June 3, 2019, Plaintiff opposed Defendant's extension request (ECF No. 13) and soon after opposed Defendant's motion to dismiss (ECF No. 18). On June 24, 2019, Defendant filed a motion to set aside the Clerk's entry of default (ECF No. 21) which Plaintiff later opposed (ECF No. 28). The present motions are fully briefed and ripe for adjudication.

## DISCUSSION

### I. Subject Matter Jurisdiction

This Court exercises subject matter jurisdiction pursuant to 28 U.S.C. § 1332.

### II. Defendant's Motion To Dismiss Plaintiff's Complaint For Lack Of Personal Jurisdiction

Of the motions pending before this Court, we begin with Defendant's motion to dismiss for lack of personal jurisdiction "[b]ecause the issue of whether this Court may exercise personal jurisdiction over [a defendant] is dispositive to the viability of the entire suit[.]" See Exporting Commodities Int'l, LLC v. S. Minerals Processing, LLC, No. 16-9080, 2017 U.S. Dist. LEXIS 190494, *8 (D.N.J. Nov. 17, 2017) (Hillman, J.); Golden Ring Int'l, Inc. v. Cullen, No. 6:18-cv-1244, 2019 U.S. Dist. LEXIS 144444, *15 (N.D.N.Y. Aug. 26, 2019) (quoting City of New York

6

<u>v. Mickalis Pawn Shop, LLC</u>, 645 F.3d 114, 138 (2d Cir. 2011))

("Even a full 'default judgment is void if it is rendered by a

court that lacks jurisdiction over the parties.'").

### a. Standard for Motion to Dismiss for Lack of Personal Jurisdiction

Federal Rule of Civil Procedure 12(b)(2) provides for

dismissal of an action when the Court does not have personal

jurisdiction over a defendant.  "Once challenged, the plaintiff

bears the burden of establishing personal jurisdiction."

<u>O'Connor v. Sandy Lane Hotel Co., Ltd.</u>, 496 F.3d 312, 316 (3d

Cir. 2007) (citing <u>Gen. Elec. Co. v. Deutz AG</u>, 270 F.3d 144, 150

(3d Cir. 2001)).  In deciding a motion to dismiss for lack of

personal jurisdiction, the Court must "accept all of the

plaintiff's allegations as true and construe disputed facts in

favor of the plaintiff."  <u>Carteret Sav. Bank v. Shushan</u>, 954

F.2d 141, 142 n.1 (3d Cir.), <u>cert. denied</u>, 506 U.S. 817 (1992)

(citations omitted).

There is a "significant procedural distinction" between a

motion pursuant to Rule 12(b)(2) and a motion pursuant to Rule

12(b)(6).  <u>Time Share Vacation Club v. Atlantic Resorts, Ltd.</u>,

735 F.2d 61, 66 n.9 (3d Cir. 1984).

> A Rule 12(b)(2) motion, such as the motion made by the
> defendants here, is inherently a matter which requires
> resolution of factual issues outside the pleadings,
> i.e. whether *in personam* jurisdiction actually lies.
> Once the defense has been raised, then the plaintiff

must sustain its burden of proof in establishing
jurisdictional facts through sworn affidavits or other
competent evidence. . . . [A]t no point may a
plaintiff rely on the bare pleadings alone in order to
withstand a defendant's Rule 12(b)(2) motion to
dismiss for lack of *in personam* jurisdiction.  Once
the motion is made, plaintiff must respond with actual
proofs, not mere allegations.

<u>Id.</u> (citation omitted).

A defendant is subject to the jurisdiction of a United
States district court if the defendant "is subject to the
jurisdiction of a court of general jurisdiction in the state
where the district court is located[.]"  Fed. R. Civ. P.
4(k)(1)(A).  "A federal court sitting in New Jersey has
jurisdiction over parties to the extent provided under New
Jersey state law." <u>Miller Yacht Sales, Inc. v. Smith</u>, 384 F.3d
93, 96 (3d Cir. 2004) (citations omitted).  The New Jersey long-
arm statute "permits the exercise of personal jurisdiction to
the fullest limits of due process." <u>IMO Indus., Inc. v. Kiekert</u>
<u>AG</u>, 155 F.3d 254, 259 (3d Cir. 1998) (citing <u>DeJames v.</u>
<u>Magnificence Carriers, Inc.</u>, 654 F.2d 280, 284 (3d Cir. 1981)).

Under the Due Process clause, the exercise of personal
jurisdiction over a non-resident defendant is appropriate when
the defendant has "certain minimum contacts with [the forum
state] such that the maintenance of the suit does not offend
'traditional notions of fair play and substantial justice.'"
<u>Int'l Shoe Co. v. Washington</u>, 326 U.S. 310, 316 (1945) (quoting

8

Milliken v. Meyer, 311 U.S. 457, 463 (1940)).  A defendant

establishes minimum contacts by "'purposefully avail[ing] itself

of the privilege of conducting activities within the forum

State,'" thereby invoking "'the benefits and protections of [the

forum State's] laws.'"  Asahi Metal Indus. Co., Ltd. v. Sup. Ct.

of California, 480 U.S. 102, 109 (1987) (quoting Burger King

Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985)).  This "purposeful

availment" requirement assures that the defendant could

reasonably anticipate being haled into court in the forum and is

not haled into a forum as a result of "random," "fortuitous" or

"attenuated" contacts with the forum state.  See World-Wide

Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980); see also

Burger King Corp., 471 U.S. at 472, 475 (internal citations

omitted).

In deciding whether a defendant's contacts with a forum are

sufficient to confer personal jurisdiction over that party, the

Court must consider whether such contacts are related to or

arise out of the cause of action at issue in the case.  The

Court may exercise specific personal jurisdiction over a

defendant where the cause of action is related to or arises out

of activities by the defendant that took place within the forum

state.  Helicopteros Nacionales de Colombia, S.A. v. Hall, 466

U.S. 408, 414 n.8 (1984).  If the cause of action has no

relationship to a defendant's contacts with a forum state, the Court may nonetheless exercise general personal jurisdiction if the defendant has conducted "continuous and systematic" business activities in the forum state. Id. at 416.

If the Court determines that the defendant has minimum contacts with the forum state, it must then consider whether the assertion of personal jurisdiction over the defendant "comport[s] with 'fair play and substantial justice'" to satisfy the due process test. Burger King Corp., 471 U.S. at 476 (quoting Int'l Shoe, 326 U.S. at 320). In this regard, it must be reasonable to require the defendant to litigate the suit in the forum state, and a court may consider the following factors to determine reasonableness: the burden on the defendant, the forum state's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining an efficient resolution of controversies, and the shared interest of the several states in furthering fundamental substantive social policies. Id. at 477 (citing World Wide Volkswagen, 444 U.S. at 292).

**b. General Personal Jurisdiction Analysis**

Plaintiff's argument focuses almost exclusively on Defendant's contacts with New Jersey arising from their business relationship, suggesting that Plaintiff abandons any argument that this Court should assert general personal jurisdiction over Defendant. Nonetheless, for purposes of completeness, the Court briefly analyzes whether the exercise of general personal jurisdiction over Defendant is appropriate.

The Third Circuit has recognized that it is "'incredibly difficult to establish general jurisdiction [over a business entity] in a forum other than [its] place of [citizenship].'" Malik v. Cabot Oil & Gas Corp., 710 F. App'x 561, 564 (3d Cir. 2017) (quoting Chavez v. Dole Food Company, Inc., 836 F.3d 205, 223 (3d Cir. 2016)). Plaintiff does not dispute that Defendant is a citizen of Georgia. See (Comp. at ¶1); (ECF No. 15) (in a certification of citizenship, Defendant certifies that it is an LLC, and all of its members are citizens of Georgia, rendering it a citizen of Georgia).[5] Based on the information available,

_____

[5] The citizenship of an LLC is determined by the citizenship of each of its members, not where it has a principal place of business, or under which state's law it is established. See Zambelli Fireworks Mfg. Co. v. Wood, 592 F.3d 412, 418 (3d Cir. 2010). Because Defendant certifies its members are Georgia citizens, the Court is satisfied – for purposes of this analysis – that Defendant is a Georgia citizen.

this Court concludes that the exercise of general personal jurisdiction over Defendant would be improper.

### c. Specific Personal Jurisdiction Analysis

Without the availability of general jurisdiction, Plaintiff must establish specific jurisdiction over Defendant in order to maintain its case in this Court. To do so, Plaintiff must show that (1) Defendant purposefully availed itself of the privilege of conducting activities in New Jersey, Asahi Metal Indus., 480 U.S. at 109; (2) the alleged harm arises from Defendant's contacts with New Jersey, Helicopteros, 466 U.S. at 414; and (3) Defendant expressly aimed its conduct at New Jersey, IMO Industries, 155 F.3d at 266. Plaintiff must present evidence, not merely allegations, establishing that the exercise of personal jurisdiction would be proper.

### 1. Purposeful Availment

To exercise specific personal jurisdiction, Defendant must have "purposefully avail[ed] itself of the privilege of conducting activities within the forum State." Williams v. Ying Zhou, No. 2:14-CV-5544-KM-MAH, 2018 WL 648354, at *4 (D.N.J. Jan. 30, 2018) (quoting Hanson v. Denckla, 357 U.S. 235, 253 (1958)).

Defendant argues that it lacks contacts with New Jersey as it: (1) is a Georgia citizen, with no offices outside of

12

Atlanta, Georgia; (2) has no employees in New Jersey; and (3) all of its projects with Plaintiff contemplated work in locations outside of New Jersey. (ECF No. 7 ("Def. Br.") at 3-4). Plaintiff cites to the parties' behavior during the course of their relationship in suggesting that personal jurisdiction over Defendant would be proper in this Court. Such dealings include: (1) the exchange of thousands of emails between the parties during the course of their relationship, with Plaintiff knowingly receiving them in New Jersey; (2) numerous phone calls that took place in furtherance of the business arrangement between the parties, with Plaintiff participating from New Jersey; (3) that much of the work occurred remotely from Plaintiff's New Jersey office; (4) the fact that invoices were sent from New Jersey; and (5) the fact that payments were repeatedly sent by Defendant to Plaintiff in New Jersey.

In deciding whether to exercise personal jurisdiction in a breach of contract-type dispute, as is presented here, a district court must consider "the totality of the circumstances, including the location and character of the contract negotiations, the terms of the contract, and the parties' actual course of dealing." Remick v. Manfredy, 238 F.3d 248, 256 (3d Cir. 2001). The "fact that a non-resident has contracted with a resident of the forum state is not, by itself, sufficient to

justify personal jurisdiction over the nonresident." <u>Mellon</u>
<u>Bank (East) PSFS, Nat. Ass'n v. Farino</u>, 960 F.2d 1217, 1223 (3d
Cir. 1992).  Here, however, Plaintiff asserts that Defendant's
contacts exceed the mere act of contracting with a New Jersey
citizen; Plaintiff alleges that Defendant actively engaged in an
ongoing business relationship during which Defendant knowingly
reached into New Jersey to further and advance that
relationship.

"[V]arious forms of communications between parties,
including written correspondence, telephone calls, and emails,
may properly factor into the minimum contacts analysis."
<u>Williams v. Ying Zhou</u>, 2018 WL 648354 at *4 (citing <u>Grant Entm't</u>
<u>Grp., Ltd. v. Star Media Sales</u>, 988 F.2d 476, 482 (3d Cir.
1993)).  "[W]hen the plaintiff can proffer evidence of a
defendant deliberately directing mail, telephone, and/or email
communications to the forum state," then a finding of personal
jurisdiction may be proper.  <u>Id.</u> (quoting <u>Arthur Schuman, Inc.</u>
<u>v. Banco Santander Brasil, S.A.</u>, No. 06-cv-1331, 2008 WL 320430,
at *5 (D.N.J. Jan. 30, 2008).  "[W]here an asserted basis for
personal jurisdiction is email communications, a threshold
question that should be asked with respect to the issue of
'purposeful availment' is whether there is any indication in the
substance of the emails, the email address itself, or other

14

facts incident to the communications that the sender of the emails was aware that the recipient was located in or would be accessing the emails from the forum state." <u>Watiti v. Walden Univ.</u>, No. 07-4782, 2008 U.S. Dist. LEXIS 43217, *32 (D.N.J. May 30, 2008).

Personal jurisdiction has been properly exercised in cases where the defendant solicited a contract or initiated the business relationship leading up to the contract, <u>Mellon Bank</u>, 960 F.2d at 1223, where the defendant sent payments to the plaintiff in the forum state, <u>North Penn Gas v. Corning Natural Gas</u>, 897 F.2d 687, 690-91 (3d Cir. 1990), and where the defendant engaged in extensive post-sale contacts with the plaintiff in the forum state, <u>Mesalic v. Fiberfloat Corp.</u>, 897 F.2d 696, 700 (3d Cir. 1990).

For example, the Third Circuit found Pennsylvania's exercise of personal jurisdiction over a non-Pennsylvania resident boxer-client of a Philadelphia attorney proper where the boxer: (1) sought out legal services by "placing a telephone call to [the lawyer's office in] Philadelphia[;]" (2) that "solicitation eventually resulted in the fee agreement between [the boxer and counsel], which [the boxer] signed . . . and returned to[] Pennsylvania[;]" (3) at least "one payment was sent by [the boxer to counsel] at his Philadelphia office[;]"

15

(4) "[m]ost of the services performed by [counsel] on behalf of [the boxer] were conducted at [counsel]'s Philadelphia office[;]" and (5) the boxer "certainly should have expected as much as he knew that [counsel]'s home office is in Philadelphia."[6] Remick, 238 F.3d at 256. The Third Circuit also highlighted the fact that the parties had "repeated 'informational communications' during the course of the contractual relationship . . . with [counsel] at his Philadelphia office." Id.

In Mellon Bank, the Third Circuit affirmed a finding of personal jurisdiction in Pennsylvania under facts far less comprehensive than those presented in Remick. Specifically, the Third Circuit found the district court's exercise of personal jurisdiction appropriate because: (1) an out-of-state entity solicited a loan from a Pennsylvania bank and (2) payments and other correspondences were sent by the debtor to the bank in Pennsylvania. The Third Circuit highlighted the fact that the defendants "were all well aware, or should have been, that they

---

[6] Like New Jersey's long arm statute, Pennsylvania's long arm statute extends jurisdiction in a manner coextensive with the due process clause of the Constitution. Dollar Savings Bank v. First Security Bank of Utah, 746 F.2d 208, 211 (3d Cir. 1984). As such, the Court finds it may properly rely upon precedent interpreting our sister-state's long arm statue in deciding the present motion.

16

were dealing with a Pennsylvania bank [and t]he . . .
agreements, which they all signed, . . . indicated that Mellon
was a Pennsylvania entity." Mellon Bank, 960 F.2d at 1223.

Plaintiff directs the Court to Lebel v. Everglades Marina,
Inc., 558 A.2d 1252 (N.J. 1989), in which the New Jersey Supreme
Court found that New Jersey could exercise personal jurisdiction
over a Florida entity where: (1) the Florida entity sold a New
Jersey citizen a boat after a meeting that took place at a boat
show in New York, (2) the defendant telephoned the buyer in New
Jersey to iron out the details of the contract, (3) the
defendant mailed the purchase contract to the buyer in New
Jersey for signing in New Jersey, and (4) the defendant received
payment from the plaintiff, who the defendant knew was a New
Jersey resident. See Lebel, 558 A.2d at 1256.

Comparing the facts of this action to the facts of Remick,
Lebel, and Mellon Bank, this Court concludes that Defendant has
sufficient contacts with New Jersey to permit the exercise of
specific personal jurisdiction over it.

Here, Defendant sought out Plaintiff's services, knowing
that Plaintiff was located in New Jersey;[7] entered into various

---

[7]  According to Keyser, Defendant knew Plaintiff was located in
New Jersey and Defendant expressed its attraction "to the idea
of working with [Plaintiff] because [it] could perform work
electronically with minimal, if any, face-to-face interaction."
(Keyser Cert. at ¶7).

contracts with Plaintiff, knowing that the majority of work would be done remotely from Plaintiff's New Jersey office;[8] the parties exchanged thousands of emails and communicated at length, with Plaintiff acting from New Jersey;[9] and Defendant sent numerous payments to Plaintiff's New Jersey office after receiving invoices from Plaintiff's New Jersey office.[10]  <u>See</u>

---

[8] Plaintiff alleges that "[a]ll, or [a] majority[] of the services were performed in the State of New Jersey" and the record supports that finding. <u>See</u> (Comp. at ¶8).  The contract before the Court contemplates completion of "Schematic Design, Design Development and [production of Construction Document[s]" as well as "on-site Construction Administration" services.  <u>See</u> (ECF No. 18-1 at 58).  Like the boxer-client in <u>Remick</u> who hired counsel with an office in Philadelphia, Defendant must have known that the large majority of the off-site work was to be completed in Plaintiff's New Jersey office.  Indeed, Defendant was "attracted to the idea of working with [Plaintiff] because [it] could perform work electronically with minimal, if any, face-to-face interaction."  (Keyser Cert. at ¶7).

[9] Plaintiff points to the fact that the parties exchanged thousands of emails, knowing that Plaintiff was receiving them in New Jersey, as proof that Defendant purposefully availed itself of New Jersey's jurisdiction.  Here, the facts undeniably show that Defendant knew the recipient of its email messages was located in or would be accessing the emails from New Jersey.  <u>See</u> <u>Watiti</u>, 2008 U.S. Dist. LEXIS 43217 at *32.  Here, Plaintiff's email signature line – found at the bottom of its many emails - contains Plaintiff's New Jersey address: 756 Haddon Ave., Collingswood, NJ 08108.  <u>See</u> (ECF No. 18-1, Ex. B).  Moreover, the first page of the relevant contracts contain Plaintiff's "Collingswood NJ" address on the first page.  <u>See,</u> <u>e.g.</u>, (Keyser Cert., Ex. E).  Such facts suggest Defendant was fully aware of where Plaintiff operated from.

[10] Checks made payable to Plaintiff from Defendant contain Plaintiff's New Jersey address on them, highlighting Defendant's

<u>Remick v. Manfredy</u>, 238 F.3d at 256 (finding the exercise of jurisdiction proper under similar facts).

These facts appear more comprehensive than those at issue in <u>Mellon Bank</u> and <u>Lebel</u> and are consistent with the facts presented in <u>Remick</u>. Guided by available precedent, this Court finds Defendant's contacts with this forum sufficient to exercise personal jurisdiction over it.

### 2. <u>Whether The Present Action Arises Out Of Defendant's Contacts With New Jersey</u>

Next, the Court must determine whether this litigation arises out of or relates to Defendant's contacts with New Jersey. <u>See</u> <u>O'Connor</u>, 496 F.3d at 317.

> With each purposeful contact by an out-of-state resident, the forum state's laws will extend certain benefits and impose certain obligations. <u>See</u> <u>Int'l Shoe</u>, 326 U.S. at 319. Specific jurisdiction is the cost of enjoying the benefits. <u>See</u> <u>Schwarzenegger v. Fred Martin Motor Co.</u>, 374 F.3d 797, 802 (9th Cir. 2004) ("In return for the[] benefits and protections [of a state's laws,] a defendant must--as a quid pro quo--submit to the burdens of litigation in that forum.") (quotation marks omitted); <u>Cote v. Wadel</u>, 796 F.2d 981, 984 (7th Cir. 1986) ("Personal jurisdiction over nonresidents of a state is a quid for a quo that consists of the state's extending protection or other services to the nonresident."). The relatedness requirement's function is to maintain balance in this reciprocal exchange. In order to do so, it must keep the jurisdictional exposure that results from a contact closely tailored to that contact's accompanying substantive obligations. The causal

knowledge and acquiescence in engaging with a New Jersey entity. <u>See</u> (ECF No. 18-1 at 97).

connection can be somewhat looser than the tort
concept of proximate causation, see Miller Yacht, 384
F.3d at 99-100, but it must nonetheless be intimate
enough to keep the quid pro quo proportional and
personal jurisdiction reasonably foreseeable.

Id. at 323.

Here, the parties' communications were exclusively related
to the contractual relationships at issue in this action.  As
such, this Court finds that the present action arises out of
Defendant's contacts with this state.

### 3. Due Process & Fairness Analysis

Having determined that minimum contacts exist and that the
claims at issue arise out of Defendant's contacts with New
Jersey, the Court next considers whether the exercise of
personal jurisdiction comports with "traditional notions of fair
play and substantial justice."  O'Connor, 496 F.3d at 324
(citing Int'l Shoe, 326 U.S. at 316).  The existence of minimum
contacts makes jurisdiction presumptively constitutional, and
the defendant "must present a compelling case that the presence
of some other considerations would render jurisdiction
unreasonable."  Id. (quoting Burger King, 471 U.S. at 477).

The Supreme Court has identified several factors to
consider when conducting this analysis, including "the burden on
the defendant, the forum State's interest in adjudicating the
dispute, the plaintiff's interest in obtaining convenient and

effective relief, [and] the interstate judicial system's interest in obtaining the most efficient resolution of controversies[.]"  Id. (quoting Burger King, 471 U.S. at 477).

On the one hand, New Jersey has an interest in resolving the present dispute, which involves one of its citizens, and Plaintiff would certainly be interested in obtaining relief where it is located.  On the other hand, Defendant might be inconvenienced by having to litigate in New Jersey.  Defendant has not explained how any such inconvenience outweighs the other factors, which the Court finds favor exercising jurisdiction. In other words, Defendant has not presented a "compelling case" suggesting the exercise of jurisdiction by this Court would be "unreasonable[.]"  O'Connor, 496 F.3d at 324.  On balance, a review of these factors suggests exercising personal jurisdiction over Defendant would be reasonable under the circumstances.

### III.  Defendant's Motion To Set Aside The Clerk's Entry Of Default

Having determined that this Court may properly exercise personal jurisdiction over Defendant, we now turn to Defendant's remaining motions.  Defendant moves to vacate the Clerk's entry of default entered against it, explaining that due to "clerical oversight," Defendant never filed its motion to dismiss Plaintiff's Complaint despite it being prepared for filing well

in advance of its actual filing date. (ECF No. 21-1 at ¶¶6, 11). Defendant argues that the Clerk's entry of default may be set aside as plaintiff has not been prejudiced by the delay, Defendant possess meritorious defenses, and that Defendant's actions were not culpable or willful. (Id. at 11-12).

Plaintiff avers that Defendant's negligence is an insufficient basis for setting aside the entry of default. See (ECF No. 28 at 9-10). Plaintiff also argues that, should the Court grant Defendant's motion to vacate the entry of default, it should consider imposing some sanction on Defendant "such as the award of attorneys' fees and costs to compensate Plaintiff for the time and expense it has incurred as a result of the Defendant's counsels' failure to adhere to court procedure." (Id. at 10). Plaintiff asks the Court to award $5,632.50 for the "lost time and unnecessary fees and costs it was forced to incur as a result of Haven's failure to adhere to the [rules]." (ECF No. 28-1 at 2).

Default judgment is governed by Federal Rule of Civil Procedure 55, which states, in relevant part, as follows:

> When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default.

Fed. R. Civ. P. 55(a). After an entry of default is entered pursuant to Rule 55(a), the plaintiff may seek the court's entry

of default judgment under either Rule 55(b)(1) or Rule 55(b)(2).

Nationwide Mut. Ins. Co. v. Starlight Ballroom Dance Club, Inc.,

175 F. App'x 519, 521 (3d Cir. 2006) (citing 10A Wright, Miller

& Kane, *Fed. Prac. & Proc.* § 2682 at 13 (3d ed. 1998)).

Rule 55 also contains a mechanism for setting aside the

entry of default. More specifically, Rule 55(c) provides that

"[t]he court may set aside an entry of default for good

cause[.]" Fed. R. Civ. P. 55(c). In determining whether good

cause exists to set aside an entry of default, the court should

consider four factors:

> (1) Whether the defendant has a meritorious defense; (2)
> whether the plaintiff would be prejudiced by vacating
> the default; (3) whether the default resulted from the
> defendant's culpable conduct; and (4) whether
> alternative sanctions would be effective.

Paris v. Pennsauken Sch. Dist., No. 12-7355, 2013 U.S. Dist.

LEXIS 112280, *10 (D.N.J. Aug. 9, 2013) (Hillman, J.) (citing

CGB Occupational Therapy, Inc. v. RHA/Pa. Nursing Homes, Inc.,

No. 00-4918, 2001 WL 253745, at *4 (E.D. Pa. Mar. 9, 2001)

(citing Emcasco Ins. Co. v. Sambrick, 834 F.2d 71, 73 (3d Cir.

1987)); Feliciano v. Reliant Tooling Co. Ltd., 691 F.2d 653, 656

(3d Cir. 1982). Although district courts are urged to make

explicit findings concerning all of these factors when

considering a motion to vacate entry of default, the second

factor is often considered to be the most important inquiry.

Nat'l Specialty Ins. Co. v. Papa, No. 11-2798, 2012 WL 868944, at *2 (D.N.J. Mar. 14, 2012) (Bumb, J.) (citing United States v. $55,518.05 in U.S. Currency, 728 F.2d 192, 194-95 (3d Cir. 1984)). Moreover, as is the case with respect to a court's entry of default judgment, a clerk's entry of "'[d]efault is not favored and all doubt should be resolved in favor of setting aside default and reaching a decision on the merits.'" CGB, 2001 WL 253745 at *4 (quoting Cents Stores v. Dynamic Distrib., No. 97–3869, 1998 WL 24338 (E.D. Pa. Jan. 22, 1998)); see also Papa, 2012 WL 868944 at *2; $55,518.05 in U.S. Currency, 728 F.2d at 194-95.

   a. Whether Defendant Has A Meritorious Defense

     First, this Court must determine whether Defendant has a meritorious defense. Defendant relies upon the affidavit of its counsel, F.R. Josh Stone, in support of its assertion that such meritorious defenses exist. Stone's affidavit contains the following assertion: "[i]f unsuccessful on its Motion to Dismiss for lack of in personam jurisdiction, I have been informed by Haven that it likewise has meritorious defenses to the claims of Kitchen on the merits." (ECF No. 21-3 ("Stone Aff.") at ¶22). Such summary statements, apparently not even based on counsel's personal knowledge, are insufficient to satisfy Defendant's burden of establishing a viable defense to the claims

submitted.[11]

Despite Defendant's deficient showing of proof on this element, courts have permitted vacatur of entry of default even absent a showing that meritorious defenses exist. See, e.g., Toy v. Hayman, No. 07-3076, 2008 U.S. Dist. LEXIS 94582, *9-10 (D.N.J. Nov. 20, 2008) (vacating entry of default despite the fact that "Defendants argue that they possess[] strong defenses [but t]he defenses are framed in very general terms and Defendants offer no specific facts in support of their meritorious defenses, as required by the Third Circuit.").

b. Whether Plaintiff Has Suffered Prejudice

Plaintiff argues that it has been prejudiced because it has incurred more than $5,000 in counsel fees in responding Defendant's motions. See (ECF No. 28 at 10); (ECF No. 28-1, ¶8). Defendant argues that no prejudice has ensued.

---

[11] The Court pauses to note that "[a]ffidavits, declarations, certifications and other documents of the type referenced in 28 U.S.C. § 1746 shall be restricted to statements of fact within the personal knowledge of the signatory." L. Civ. R. 7.2(a). Stone's affidavit suggests he lacks personal knowledge of the alleged fact to which he testifies, instead relying on his client's mere suggestion that it has unspecified "meritorious defenses[.]" (Stone Aff. at ¶22) ("I have been informed by Haven that it likewise has meritorious defenses"). Such would render Stone's affidavit improper. Moreover, Local Civil Rule 7.2(a) provides that improper use of an affidavit "may subject the signatory to appropriate censure, sanctions or both." L. Civ. R. 7.2(a). While the Court will not impose any such sanction at this time, counsel must note that continued non-compliance may warrant imposition of appropriate sanctions.

"Prejudice under this prong accrues due to a loss of available evidence, increased potential for fraud or collusion, or substantial reliance upon the judgment." Replication Med., Inc. v. Aureus Med. GmbH, No. 15-1685, 2015 U.S. Dist. LEXIS 88394, *15-16 (D.N.J. July 8, 2015) (citation and internal quotation marks omitted).

This action remains at its earliest stages, Defendant having not yet answered the Complaint and Plaintiff having not "substantially relied upon the [Clerk's] entry of default." Jimenez v. Marnell, No. 06-2676, 2006 U.S. Dist. LEXIS 82860, *12 (D.N.J. Nov. 13, 2006). Such is underscored by the fact that Plaintiff has not moved for entry of default judgment and no such judgment has been entered. Nor has Plaintiff established that evidence has become unavailable or that there is now an increased risk of fraud or collusion. As such, the Court finds that this factor weighs in favor of vacating the Clerk's entry of default. The Court finds that Plaintiff's request for attorneys' fees and costs as a sanction is best addressed under the alternative remedy analysis below.

c. Appropriateness Of Alternative Remedy/Sanction

Under this inquiry, the Court must decide if an alternative sanction would be necessary. While Plaintiff asks the Court to impose a monetary sanction in an amount equal to the fees and

costs it incurred as a result of litigating the issue of default, the Court finds that sanctions in such a form are not presently warranted. The Court does find, however, that the behavior of Defendant's counsel warrants further comment.

Defendant represents that its late filing was caused by "clerical oversight[.]" Defendant suggests that the oversight was the result of a lack of support staffing at Defendant's counsels' office. Such an excuse ignores the responsibility of admitted counsel, not support staff, to ensure timely compliance with this Court's Rules. That responsibility cannot he delegated or outsourced. Such failures in the future will not be taken lightly by the Court. On balance, the Court finds that vacating the Clerk's entry of default, without imposing sanctions at this time, is appropriate, and therefore, the Court will grant Defendant's motion to do so.

### IV.  Defendant's Motion For An Extension of Time

Having determined that vacatur of the Clerk's entry of default is warranted, the Court will also grant the motion captioned as a motion for an extension of time to file Defendant's motion to dismiss.

"[D]istrict courts have the inherent authority to manage their dockets and courtrooms with a view toward the efficient and expedient resolution of cases." <u>Dietz v. Bouldin</u>, 136 S.

Ct. 1885, 1892, 195 L. Ed. 2d 161 (2016). "As court dockets grow, the proportionate amount of time available to entertain litigation necessarily decreases." Planned Parenthood of Cent. New Jersey v. Verniero, 22 F. Supp. 2d 331, 339 (D.N.J. 1998). "Rule 1 of the Federal Rules of Civil Procedure provides that the Federal Rules 'shall be construed to secure the just, speedy, and inexpensive determination of every action.'" Id. (quoting Fed. R. Civ. P. 1). As a result, a court has "great powers to control the preparation, processing and presentation of civil cases . . . and the command of Fed. R. Civ. P. 1, that the rules be construed 'to secure the just, speedy, and inexpensive determination of every action' is the polestar and the standard." Id. (quoting United States v. R.J. Reynolds Tobacco Co., 416 F. Supp. 316, 322 (D.N.J. 1976)).

Certainly, with the entry of default vacated, this case must proceed. Defendant's objection to granting Defendant's motion for an extension of time would result in an undesired standstill, delaying any resolution of this action, contrary to the spirt of Rule 1. As such, in an effort to bring this matter to a timely and just resolution, and the Court having considered the motion on the merits, the Court will grant Defendant's motion for an extension of time *nunc pro tunc*.

**CONCLUSION**

For the reasons expressed above, the Court finds that the exercise of personal jurisdiction over Defendant is appropriate and that vacatur of the entry of default is also appropriate. As such, Defendant's motion to dismiss (ECF No. 7) will be denied, and the remaining motions (ECF Nos. 8 & 21) will be granted.  An appropriate Order will be entered.


Date: December 4, 2019            s/ Noel L. Hillman
At Camden, New Jersey          NOEL L. HILLMAN, U.S.D.J.