```
                UNITED STATES DISTRICT COURT
                   DISTRICT OF NEW JERSEY
```

```
    KITCHEN & ASSOCAITES
    SERVICES, INC.,                 1:19-cv-10995-NLH-JS

              Plaintiff,            OPINION

         v.

    HAVEN CAMPUS COMMUNITIES,

              Defendant.
```

**APPEARANCES**:

PAIGE M. BELLINO
STEPHEN MCNALLY
CHIUMENTO MCNALLY, LLC
ONE ECHELON PLAZA
227 LAUREL ROAD, SUITE 100
VOORHEES, NJ 08043

    *Attorneys for the Plaintiff.*

MATTHEW S. ROGERS
123 PROSPECT STREET
RIDGEWOOD, NJ 07451

    *Attorney for the Defendant.*

**HILLMAN, District Judge**

    This matter comes before the Court by way of Plaintiff Kitchen & Associate Services, Inc.'s motion to dismiss several counterclaims by Defendant Haven Campus Communities.  (ECF No.

1

36.)  For the reasons stated below, the Court will grant in part and deny in part Plaintiff's motion to dismiss.

## BACKGROUND

The current matter is part of a larger dispute between the parties.  Both parties are involved in the business of designing and constructing student campus housing across the country.  Plaintiff operates out of New Jersey, while Defendant operates out of Georgia.

The parties first met at an industry conference in Austin, Texas in May 2014.  The parties agreed to enter into a series of contracts in which Plaintiff Kitchen & Associates Services, Inc. would provide Defendant Haven Campus Communities with interior design, architectural, and engineering services related to housing projects at various universities.  (ECF No. 1-1 ("Compl.") at ¶3); (ECF No. 18-1 ("Keyser Cert.") at ¶4.)  These contracts involved housing projects in Indiana, Texas, North Carolina, and Florida.  (Keyser Cert. at ¶¶4, 12); (ECF No. 7-1 ("Boyle Aff.") at ¶5.)

Because the parties are located in different states, much of their collaboration has been conducted via email and telephone conference.  As noted in the Court's earlier opinion in this case, Defendant was "attracted to the idea of working with [Plaintiff] because [it] could perform work electronically with minimal, if any face-to-face interaction."  Kitchen &

2

Assocs. Servs., Inc. v. Haven Campus Communities, No. 1:19-10995, 2019 WL 6606857, at *2 (D.N.J. Dec. 4, 2019) (citing Keyser Cert. at ¶ 7). Once Plaintiff completed its work, Defendant would generally mail payment via check to Plaintiff's office in Collingswood, New Jersey. (Keyser Cert. at ¶21).

Some of the projects Plaintiff and Defendant collaborated on were completed, like the North Carolina project. Others, such as the Indiana Purdue University, Indianapolis, Indiana project, were never constructed. Kitchen also contends that these projects were conducted in collaboration with entities related to Defendant, such as Haven-Fayetteville, LLC and Haven Charlotte, LLC.

In March 2019, Plaintiff filed a suit against Defendant in New Jersey state court. Plaintiff's complaint contained seven counts: (1) Breach of Contract; (2) Breach of Contract Implied in Law; (3) Breach of Contract Implied in Fact; (4) Outstanding Book Account; (5) Unjust Enrichment; (6) Promise to Pay; and (7) Violation of the Prompt Payment Act. In sum, Plaintiff alleged that Defendant owed an outstanding balance of $586,804.01 plus interest. (See Compl.)

Defendant removed this action in April 2019. (ECF No. 1.) After failing to file an answer or pre-answer motion, the Clerk entered default against Defendant. (ECF No. 5.) Defendant later filed three motions: a motion to dismiss the complaint, a

motion for an extension of time to file its motion to dismiss, and a motion to set aside the Clerk's entry of default. (ECF Nos. 7-8, 21.) In December 2019, this Court denied Defendant's motion to dismiss and granted both Defendant's motion for an extension of time and its motion to set aside default. (ECF No. 29.)

Shortly thereafter, Defendant filed an answer and counterclaims against Plaintiff. Defendant's answer contained fourteen affirmative defenses,[1] and denied substantial portions of Plaintiff's complaint. Defendant also asserted five counterclaims against Plaintiff: (1) Breach of Contract Regarding Indiana Project; (2) Breach of Contract Regarding North Carolina Project; (3) Negligence/Professional Malpractice

---

[1] These defenses include: (1) the work Plaintiff did was of no value to Defendant; (2) Plaintiff knew the project was speculative; (3) Plaintiff's claims are barred by prior breach of contract; (4) Plaintiff increased the risk to Defendant and discharged it; (5) Plaintiff's claim are barred because Defendant never entered into an "outstanding book account" relationship with Plaintiff; (6) Plaintiff's claim are barred because this matter is not governed by New Jersey law and its claims have no standing under the applicable law; (7) Plaintiff cannot claim unjust enrichment where the services provided have no value; (8) Plaintiff did not deal with a representative of Defendant with authority to bind Defendant; (9) Plaintiff cannot claim quantum meruit where the services Plaintiff provided have no value; (10) Plaintiff did not deal with a representative of Defendant with authority to bind; (11) Plaintiff failed to mitigate damages; (12) Plaintiff's claim is subject to set-off; (13) Plaintiff's claim is inflated an unreasonable; (14) Plaintiff's claims are barred by unclean hands. (See ECF No. 32.)

Regarding North Carolina Project; (4) Misrepresentation Regarding North Carolina Project; and (5) Misrepresentation Regarding North Carolina Project. (ECF No. 32.) In contrast to Plaintiff's claims, which only relate to the Indiana Project, Defendant's counterclaims also relate to a project the parties completed in North Carolina. This project was governed by the "NCC Contract" between Plaintiff and Haven-Charlotte, LLC, a non-party in this action.

Plaintiff filed a motion to dismiss counts two through five of Defendant's counterclaims in February 2020. (ECF No. 36.) Plaintiff contends that counts two through five of Defendant's counterclaims should be dismissed pursuant to the <u>forum non conveniens</u> doctrine or, in the alternative, transferred to another district.[2] This matter has been fully briefed and is ripe for adjudication.

---

[2] Plaintiff also sought to dismiss counterclaims 2-5 pursuant to Federal Rule of Civil Procedure 12(b)(6) on the grounds that Defendant has failed to satisfy a condition precedent. Shortly before filing its opposition to Plaintiff's motion to dismiss, Defendant filed a request for mediation with the American Arbitration Association. Accordingly, Plaintiff has withdrawn its request for dismissal on the grounds that the Defendant has failed to satisfy a condition precedent. The parties agree to participate in mediation in good faith. (ECF No. 46, at 3-4). Because Plaintiff has withdrawn its motion with respect to this argument, the Court will not rule on whether Defendant has adequately stated a claim under Rule 12(b)(6).

## DISCUSSION

### A. Subject Matter Jurisdiction

This Court has original jurisdiction under 28 U.S.C. § 1332(a) because there is complete diversity between the parties.

### B. Motion to Dismiss Standard under Forum Non Conveniens

In general, the Supreme Court has warned against disturbing a plaintiff's choice of forum. See Piper Aircraft Co. v. Reyno, 454 U.S. 235, 241 (1981) (citing Gulf Oil Corp. v. Gilbert, 330 U.S. 501 (1947) and Koster v. Lumberments Mut. Cas. Co., 330 U.S. 518 (1947)). However, a court has discretion to dismiss a case on forum non conveniens grounds "when an alternative forum has jurisdiction to hear [the] case, and . . . trial in the chosen forum would establish . . . oppressiveness and vexation to a defendant . . . out of all proportion to plaintiff's convenience, or . . . the chosen forum [is] inappropriate because of considerations affecting the court's own administrative and legal problems." Sinochem Intern. Co. Ltd. v. Malaysia Intern. Shipping Corp., 549 U.S. 422, 430 (2007) (citations omitted). Dismissal for forum non conveniens is a reflection of a court's assessment of a "range of considerations, most notably the convenience to the parties and the practical difficulties that can attend the adjudication of a

dispute in a certain locality." Id. (citing Quackenbush v. Allstate Ins. Co., 517 U.S. 706, 723 (1996)).

The Supreme Court has described forum non conveniens as "a supervening venue provision, permitting displacement of the ordinary rules of venue when, in light of certain conditions, the trial court things that jurisdiction ought to be declined." Id. With this description in mind, the Supreme Court has also stated that "the common-law doctrine of forum non conveniens 'has continuing application [in federal courts] only in cases where the alternative forum is abroad' . . . and perhaps in rare instances where a state or territorial court serves litigational convenience best." Id. (citing American Dredging Co. v. Miller, 510 U.S. 443, 447-48 (1994) and 14D C. Wright, A. Miller, & E. Cooper, Federal Practice and Procedure § 3828, pp. 620–623, and nn. 9-10 (3d ed. 2007)).

To guide trial courts in exercising this discretion, the Supreme Court has provided a list of private and public interest factors.  The private factors include:

> relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive.

Piper Aircraft Co., 454 U.S. at 241 n. 6 (quoting Gulf Oil Corp., 330 U.S. at 508).  The public factors include:

7

> the administrative difficulties flowing from court congestion; the "local interest in having localized controversies decided at home"; the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and the unfairness of burdening citizens in an unrelated forum with jury duty.

Id.

The Court will address these factors as they relate to this matter below.

**C. Standard for Motion to Transfer Venue**

Section 1404(a) states that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). Analysis of whether a transfer is appropriate under § 1404(a) is flexible, and based on the unique facts of the case. Ricoh Co. v. Honeywell, Inc., 817 F. Supp. 473, 479 (D.N.J. 1993).

The Court of Appeals for the Third Circuit has provided interest factors, both public and private, for a court to consider when undertaking analysis of whether to transfer under § 1404(a). Jumara v. State Farm Ins. Co., 55 F.3d 873, 879 (3d Cir. 1995). The private interest factors are: (1) the plaintiff's forum preference; (2) the defendant's forum preference; (3) where the claim arose; (4) the convenience of

8

the parties; (5) the convenience of the witnesses; and (6) the location of books and records. Id.

The public interest factors are: (1) the enforceability of the judgment; (2) practical considerations that could make the trial easy, expeditious, or inexpensive; (3) the relative administrative difficulty from court congestion; (4) local interest in deciding local controversies at home; (5) public policies of the fora; and (6) the familiarity of the trial judge with applicable state law in diversity cases. Id. at 879-80.

**D. Analysis**

**1. Dismissal for Forum Non Conveniens**

Plaintiff argues that Defendant's counterclaims should be dismissed or transferred under the doctrine of forum non conveniens because, according to Plaintiff, it would make little sense to litigate Defendant's counterclaims regarding the North Carolina project at the same time that the parties litigate the Indiana project claims.

Plaintiff offers several arguments for why these counterclaims should be dismissed to North Carolina state court. (ECF No. 36-1.)  First, Plaintiff again underscores that the parties to the NCC Contract are different than the parties involved in the claims relating to the Indiana Project.  Next, Plaintiff highlights that unlike the North Carolina Project, the Indiana Project was never completed.  Third, Plaintiff asserts

9

that there are many potential witnesses and parties implicated in Defendant's counterclaims over which this Court would lack personal jurisdiction. Fourth, Plaintiff points out that New Jersey is not Defendant's home forum, a fact which Plaintiff asserts is critical to a forum non conveniens analysis. Plaintiff argues that because Defendant previously filed a motion to dismiss based on lack of personal jurisdiction, Defendant's decision to bring these counterclaims at this point should be considered tactical and for the sole purpose of creating leverage that Defendant otherwise lacks.

Plaintiff alleges that North Carolina state court is the proper alternative forum for these claims because most of the witnesses and evidence is in North Carolina. Plaintiff further alleges that North Carolina has a strong local interest in hearing Defendant's counterclaims as the project was completed in North Carolina.

Defendant asserts that Kitchen is not entitled to dismiss based on forum non conveniens. (ECF No. 44.) According to Defendant, forum non conveniens does not apply to its counterclaims because: (a) Kitchen is the Plaintiff and forum non conveniens is a doctrine to be invoked by defendants; (b) Plaintiff selected New Jersey as the forum; (c) Plaintiff is a citizen of New Jersey; and (d) Haven is merely alleging a counterclaim in the forum selected by Plaintiff. Defendant

10

maintains that it could not possibly be forum shopping because in this case Plaintiff selected the forum.

The parties agree that this is a unique situation. Plaintiff maintains that it is "extremely rare for a defendant in a lawsuit to file a counterclaim which is not germane or connected in any way to the original action filed against it" and acknowledges that this matter may be the first of its kind. (ECF No. 46, at 6.)

Though the parties may be convinced that the present case is unique, the Court will apply the standard <u>forum non conveniens</u> analysis. The Court will decline to dismiss counterclaims two through five under the doctrine of <u>forum non conveniens</u>. North Carolina state court, the alternative forum identified by Kitchen, is not abroad. Kitchen is therefore tasked with demonstrating that this is one of the rare instances in which a state court in North Carolina would "serve[] litigational convenience best."  <u>Sinochem Intern. Co. Ltd.</u>, 549 U.S. at 430.

Kitchen has alleged that North Carolina has an interest in hearing these claims because the project is located in North Carolina.  New Jersey may also have an interest in hearing these claims, as Kitchen is a New Jersey corporation.  Kitchen has further alleged that most of the sources of proof and witnesses relating to Haven's counterclaims are located in North Carolina.

11

While it may be true that certain relevant witnesses, like the contractors involved in this project, are located in North Carolina, the Court has previously observed that the parties conducted much of their business relationship through email and over the telephone.  Kitchen & Assocs. Servs., Inc., 2019 WL 6606857, at *2.  These documents and sources of proof would likely be available in the current forum.  As a New Jersey corporation who selected New Jersey as the forum to litigate its claims against Haven, the Court cannot conclude that hearing Haven's counterclaims in the same forum would be oppressive and a vexation.  Sinochem Intern. Co. Ltd., 549 U.S. at 430.

Though Kitchen is correct that it may be more convenient to litigate these counterclaims in North Carolina, Kitchen has fallen short of the requirements for dismissal under the doctrine of forum non conveniens.  Therefore, the Court will deny Plaintiff's motion to dismiss on that basis.

### 2. Transfer under 28 U.S.C. § 1404

Alternatively, Kitchen explains it does not oppose the idea of this Court transferring counterclaims 2-5 to the Western District of North Carolina pursuant to 28 U.S.C. § 1404.  Somewhat inconsistently, Kitchen also states transfer is not a valid option in this case because this action did not originate in a federal court; however, this Court has the "discretion to carve out compromises and impose conditions when entertaining a

12

motion to dismiss for *forum non conveniens*." (ECF No. 46 at 8-9.) Defendant fails to respond to this argument and only argues why this Court should not dismiss or transfer counterclaims 2-5 pursuant to forum non conveniens.

This Court does not agree with Kitchen's reading of § 1404 and instead recognizes transfer under § 1404 may appropriate even if the matter was originally filed in state court and later removed. See, e.g., Kidstar v. Facebook, Inc., No. 18-13558, 2020 WL 4382279, at *1, 5 (D.N.J. July 31, 2020) (granting defendants' motion to transfer venue even though defendants removed the matter from New Jersey state court); Dawood v. LaTouche, No. 17-04591, 2018 WL 925007, at *1 (E.D. Pa. Feb. 16, 2019) (citations omitted) ("Dawood sued LaTouche and Dove in the Philadelphia County Court of Common Pleas. After removing Dawood's Complaint to federal court, LaTouche and Dove filed a Motion to Transfer Pursuant to 28 U.S.C. § 1404(a). The Court grants the motion."). This Court previously found that Kitchen was unable to satisfy the more demanding standard of dismissing counterclaims 2 - 5 pursuant to forum non conveniens doctrine where the alternative location was a state court rather than abroad. Nevertheless, this Court finds under a § 1404 analysis the Western District of North Carolina is a more convenient forum to hear counterclaims 2-5, which relate solely to the North Carolina Project.

This Courts' analysis first starts with weighing the private factors.  First, a plaintiff's forum choice generally is entitled to deference.  See Jumara, 55 F.3d at 880.  However, when the central dispute in a lawsuit arose from events that occurred exclusively in another forum, as is the case here, courts give substantially less weight to the plaintiff's forum choice.  See Goldstein v. MGM Grand Hotel & Casino, No. 15-4173, 2015 WL 9918414, at *2 (D.N.J. Nov. 5, 2015) (finding that "the plaintiff's choice of forum is discounted significantly where the case has little connection with the chosen forum, and the nucleus of operative facts occurred elsewhere") (internal quotations omitted); see also Foster v. Marriott Resort Hosp. Corp., No. 17-12901, 2018 WL 3360763, at *2 (D.N.J. July 10, 2018) (noting that "[t]his court has frequently disregarded a plaintiff's preferred venue when New Jersey has little connection to the operative facts").  Here, while Haven, Counter-Plaintiff, clearly prefers to litigate the counterclaims relating to the North Carolina Project in New Jersey, the events giving rise to those counterclaims occurred solely in North Carolina.  Counter-Plaintiff's forum choice is thus given substantially less deference.

The second factor, Counter-Defendant's preference, weighs in favor of transfer, as Kitchen prefers to litigate the counterclaims related exclusively to the North Carolina Project

14

in the Western District of North Carolina.  Second and similarly, because Haven's counterclaims arose from events that occurred in North Carolina, this third factor weighs in favor of transfer.  See Mancini v. Benihana Nat. Corp., No. 13-03167, 2013 WL 6147808, at *2 (D.N.J. Nov. 22, 2013) ("That the operative facts giving rise to the action occurred in another district weighs in favor of transfer.").

Third, the final three factors——convenience of the witnesses, location of books and records, and convenience of the parties——also slightly weigh in favor of transferring this matter to the Western District of North Carolina.  This Court recognizes a large portion of the evidence may be available in this forum given the frequency of email usage; however, as Kitchen notes, the North Carolina Project involved many local North Carolinians.

Moreover, while most evidence could likely be sent to New Jersey electronically, and thus the distance would not present any significant hurdle, the fact remains that any non-party evidence remains in North Carolina, outside the subpoena power of this Court. See FED. R. CIV. P. 45(c)(2) ("A subpoena may command . . . production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person").  Similarly, given the involvement of

approximately 46 consultants, contractors, and subcontractors who were not from New Jersey and instead mostly from North Carolina, this Court agrees it would be more convenient for the witnesses for the claims related to the North Carolina Project to be heard in the Western District of North Carolina.

Finally, Kitchen seems to be the most convenient party to this litigation if the matter remains in New Jersey as it is the only New Jersey citizen; however, Kitchen is the one requesting this Court to transfer the matter.  At most, the Court finds this factor neutral as Haven is also not a resident of New Jersey or North Carolina.  In sum, this Court finds the private factors weigh in favor of transferring counterclaims 2 - 5 to the Western District of North Carolina.

Addressing the public factors next, this Court finds that these similarly weigh in favor of transfer.  First, neither party addresses potential problems with enforceability of judgments, but the Court notes that the North Carolina claims relate to contracts with non-parties to this litigation which raises issues of not only Defendant's motives but the enforceability and even propriety of any judgment against Plaintiff.  This factor favors severance and transfer of counterclaims 2-5.  Second, this Court finds the practical considerations factor favors transfer because as addressed

16

above, litigating in New Jersey would make it more difficult to gather evidence and witnesses.

Third, as most recently reported, the District of New Jersey has 32,019 pending cases, while the Western District of North Carolina has 1,129 pending cases. See U.S. Courts, Federal Judicial Caseload Statistics tbl. C (March 31, 2019), https://www.uscourts.gov/statistics/table/c-1/federal-judicial-caseload-statistics/2019/03/31. Considering the relative court congestion and administrative difficulty between fora, this factor weighs in favor of transfer.

Fourth, "[c]ourts have an interest in deciding local controversies, and consequently, when an action involves injuries sustained in a particular locale, the public interest supports adjudication of the controversy in that locale." Mancini, 2013 WL 6147808, at *4 (internal quotations omitted). Because the incidents giving rise to this case occurred solely in North Carolina, it has a stronger local interest in this litigation than does New Jersey, as its only connection to the litigation is that Kitchen is a New Jersey resident. "Although New Jersey may harbor a valid interest in protecting its citizens when they travel abroad, 'the burden of jury duty is more fairly placed on the [local] residents . . . who maintain an interest in resolving disputes which arise from accidents happening within their borders.'" Mancini, 2013 WL 6147808, at

17

*4 (quoting Coppola v. Ferrellgas, Inc., 250 F.R.D. 195, 201 (E.D. Pa. 2008)).  Accordingly, this factor weighs in favor of transfer.

Fifth, because North Carolina tort and contract law would apply to counterclaims 2 - 5, as the North Carolina Project occurred in North Carolina, this final factor also weighs in favor of transfer.  See, e.g., Foster, 2018 WL 3360763, at *3 (considering motion to transfer from New Jersey to Florida and finding that, "while a district court sitting in diversity is able to interpret any state's law, a Florida court will be more familiar with Florida negligence law"); Goldstein, 2015 WL 9918414 at *5 (noting that, "while this Court has the wherewithal to apply" another state's law, a district court within the applicable state is "certainly more likely to have a better knowledge of [that state's] tort law").

Considering that the public and private interest factors weigh in favor of transfer, this Court finds that transfer to the Western District of North Carolina is appropriate.  This Court notes that it may sever claims under Federal Rule of Civil Procedure 21, and then transfer the severed claims under Section 1404(a), while retaining jurisdiction over the remaining claims in an action.  Dao v. Knightsbridge Int'l Reins. Corp., 15 F. Supp. 2d 567, 576 (D.N.J. 1998); see also White v. ABCO Eng'g Corp., 199 F.3d 140, 144 (3d Cir. 1999) ("Nothing within § 1404

18

prohibits a court from severing claims against some defendants from those against others and transferring the severed claims."). This procedure is "not likely to be appropriate where the partial transfer would require the same issues to be litigated in two places." Dao, 15 F. Supp. 2d at 576 (quotation and citation omitted). Moreover, severance is inappropriate where the "potential inefficiency of litigating the same facts in two separate forums" outweighs "the convenience to the parties requesting transfer." White, 199 F.3d at 144. Here, transferring only some of Haven's counterclaims would be appropriate because counterclaims 2 – 5 relate entirely to the North Carolina Project while the remaining claims and counterclaim only relate to the Indiana Project. Thus, the same issues and facts would not be litigated in two places.

## CONCLUSION

For the above reasons, the Court will deny Kitchen's Motion to Dismiss to the extent it seeks dismissal of counterclaims 2 – 5 and grants Kitchen's Motion to the extent it seeks to transfer the asserted counterclaims 2 – 5 to the United States District Court for the Western District of North Carolina. Those counterclaims will be severed and transferred.

An appropriate Order will be entered.

Date: December 28, 2020                     s/ Noel L. Hillman
At Camden, New Jersey                       NOEL L. HILLMAN, U.S.D.J.