# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

KITCHEN & ASSOCIATES SERVICES, INC.,

        Plaintiff,

    v.

HAVEN CAMPUS COMMUNITIES,

        Defendant.

No. 1:19-cv-10995

**OPINION**

**APPEARANCES**:

Gary C. Chiumento
Juan C. Perez
THE CHIUMENTO LAW GROUP, LLC
Laurel Oak Corporate Center
1020 Laurel Oak Road, Ste. 203
Voorhees, NJ 08043

    *On behalf of Plaintiff.*

**O'HEARN, District Judge.**

    This matter comes before the Court on Plaintiff Kitchen & Associates Services, Inc.'s ("Plaintiff") Motion for Default Judgment as to the unrepresented Defendant, Haven Campus Communities ("Defendant"). (ECF No. 96). The Court did not hear oral argument pursuant to Local Rule 78.1. For the reasons that follow, Plaintiff's Motion is **GRANTED**.

I. **BACKGROUND**[1]

This case arises from a prolonged business dispute between the parties, crossing multiple state lines and spanning several years. (Op., ECF No. 56 at 2). Until recently, both companies had been in the business of designing and constructing student campus housing across the country. (Op., ECF No. 56 at 2). Starting in 2014, Plaintiff, a New Jersey corporation with a principal place of business in this state, and Defendant, a Georgia corporation principally operating there, executed a series of contracts under which Plaintiff would provide Defendant interior design, architectural, and engineering services related to housing projects at various universities. (Notice of Rem. ("NOR"), ECF No. 1; Compl., ECF No. 1-1; Op., ECF No. 56 at 2). After several years of productive work together, the relationship fell apart, several of the parties' projects were never constructed, and invoices from Plaintiff to Defendant went unpaid. (NOR, ECF No. 1; Compl., ECF No. 1-1).

Plaintiff filed suit in the Superior Court of New Jersey, Camden County, on March 14, 2019, alleging Defendant's (i) breach of contract; (ii) breach of contract implied in law; (iii) breach of contract implied in fact; (iv) outstanding book account; (v) unjust enrichment; (vi) promise to pay; and (vii) violation of the Prompt Payment Act, N.J. STAT. ANN. § 2A:30A-2. (Compl., ECF No. 1-1). In total, Plaintiff alleged an outstanding balance of $586,804.01 plus interest. (Compl., ECF No. 1-1). Based on Plaintiff's alleged damages and the parties' diversity of citizenship, Defendant removed the action to this Court on April 24, 2019, invoking diversity jurisdiction under 28 U.S.C. § 1332. (NOR, ECF No. 1).

---

[1] The Court incorporates by reference the factual discussions in its two prior Opinions in this case, (Ops., ECF Nos. 29, 57), but includes the following brief factual recitation for context.

Immediately after removal, the procedural history of this matter became complicated. Despite its own removal of the case, Defendant thereafter failed to timely respond to Plaintiff's Complaint, and the Clerk of Court entered a default against it on Plaintiff's request on May 20, 2019. (ECF No. 5). Defendant later moved to vacate the default, (ECF No. 21), and to dismiss Plaintiff's claims, (ECF No. 7); the Court granted the former Motion but denied the latter on December 5, 2019, (Op. & Order, ECF Nos. 29–30). Defendant then filed its Answer with counterclaims on December 30, 2019. (ECF No. 32). Plaintiff filed an Answer thereto on January 17, 2020. (ECF No. 34).

Plaintiff then filed a Motion to Dismiss, or Alternatively, to Transfer some of Defendant's counterclaims to the U.S. District Court for the Western District of North Carolina. (ECF No. 36). The Court granted that Motion to the extent it sought those counterclaims' transfer, severing Counterclaims II through V, on December 29, 2020. (Op. & Order, ECF Nos. 57–58). Thus, only Plaintiff's claims and one of Defendant's counterclaims remained at issue in this case.

After all this, however, on July 9, 2021, Defendant's counsel filed a motion seeking to withdraw from its representation, which Plaintiff did not oppose. (ECF Nos. 69, 71–72). Counsel explained in their papers and during a telephone hearing with Magistrate Judge Matthew J. Skahill that "Haven is no longer an operating business [and] no longer has an office of employees," and further "has no funds to pay for the ongoing attorneys' fees associated with this action, and . . . no assets to satisfy any judgment that may be entered for Plaintiff." (Br. in Supp. of Mot. to Withdraw, ECF No. 69-1 at 2). In light of these facts, the Court granted the Motion to Withdraw on November 10, 2021. (Order, ECF No. 79). However, because this left Defendant as an unrepresented

corporate entity,[2] the Court further ordered Defendant to retain counsel by December 6, 2021, or face the potential dismissal of its counterclaim and the entry of default. (Order, ECF No. 79).

Unsurprisingly given its reported financial situation, Defendant did not retain new counsel by the Court's imposed deadline, and Plaintiff accordingly sought the entry of default by this Court's Clerk. (ECF No. 85–86). However, because Defendant had already filed an Answer, (ECF No. 32)—not to mention its counterclaims—the Clerk was unable to enter a default pursuant to Federal Rule 55(a). Instead, the Court granted Plaintiff leave to file a motion for the entry of default by the Court itself. (Text Order, ECF No. 87). Such a Motion followed, (ECF No. 88), which the Court granted, (ECF No. 89).[3] The default having been entered, the present Motion for Default Judgment followed, (ECF No. 96).[4]

## II.    LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 55(a), a plaintiff may request an entry of default by the clerk of court as to "a party against whom a judgment for affirmative relief is sought [who] has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise[.]" FED. R. CIV. P. 55(a). Once a default has been entered, the plaintiff may then seek the entry of a

---

[2] As the Court has previously noted, "[i]t has been the law for the better part of two centuries . . . that a corporation may appear in the federal courts only through licensed counsel." (Order, ECF No. 89 at 1 (quoting *Rowland v. Cal. Men's Colony*, 506 U.S. 194, 201–02 (1993))).

[3] More specifically, the Court struck Defendant's Answer and remaining counterclaim as a sanction under Federal Rule 37(b) for failing to retain counsel and ordered the Clerk to enter a default under Rule 55(a). (ECF No. 89).

[4] The Court terminated, (Orders, ECF Nos. 91, 93), two prior attempts by Plaintiff to obtain a default judgment for failure to comply with the Court's Local Rules, (First Mot., ECF No. 90; Second Mot., ECF No. 92). Having now filed a proper motion supported by a brief, the Court is prepared to consider its arguments on the merits.

default *judgment*—either by the clerk or the court itself—under Rule 55(b). FED. R. CIV. P. 55(b).[5]

A party is not entitled to a default judgment as of right; "the entry of such a judgment is left primarily to the discretion of the district court." *DirecTV, Inc. v. Asher*, No. 03-01969, 2006 WL 680533, at *1 (D.N.J. Mar. 14, 2006) (citing *Hritz v. Woma*, 732 F.2d 1178, 1180 (3d Cir. 1984)). Because default judgments prevent the resolution of claims on their merits, courts generally "do[] not favor entry of defaults and default judgments.'" *United States v. Thompson*, No. 16-00857, 2017 WL 3634096, at *1 (D.N.J. July 20, 2017) (quoting *United States v. $55,518.05 in U.S. Currency*, 728 F.2d 192, 194 (3d Cir. 1984)).

When considering a motion for default judgment, "[a] defendant is deemed to have admitted the factual allegations of the Complaint . . . except those factual allegations related to the amount of damages." *DirecTV*, 2006 WL 680533, at *1 (citing 10A CHARLES A. WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FED. PRAC. & PROC. § 2688, at 58–59 (3d ed. 1998)). In contrast, "the Court need not accept the moving party's legal conclusions, because even after default it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law." *Id.* (citing WRIGHT, MILLER & KANE, *supra*, § 2688, at 63).

Through this lens, courts must evaluate three factors: "(1) whether the party subject to default has a meritorious defense, (2) the prejudice suffered by the party seeking default, and (3) the culpability of the party subject to default." *Doug Brady, Inc. v. N.J. Bldg. Laborers Statewide Funds*, 250 F.R.D. 171, 177 (D.N.J. 2008) (citing *Emcasco Ins. Co. v. Sambrick*, 834 F.2d 71, 74

---

[5] Typically, before entering a default judgment, a court must satisfy itself that the plaintiff effected proper service upon the defaulting defendant. *See, e.g.*, *Gold Kist, Inc. v. Laurinburg Oil Co., Inc.*, 756 F.2d 14, 18–19 (3d Cir. 1985). Here, of course, there is no question that Defendant was properly served, as Defendant had previously appeared and defended this case before its counsel's withdrawal.

(3d Cir. 1987)). If these factors weigh in a plaintiff's favor, the court may grant default judgment.

### III. DISCUSSION

Plaintiff has moved for default judgment as to its claims against Defendant pursuant to Federal Rule 55(b). Because (i) Defendant lacks a meritorious defense, (ii) failure to grant judgment to Plaintiff would be unfairly prejudicial, and (iii) Defendant is culpable, Plaintiff's Motion is granted.

*First*, as to the merit of any defenses Defendant could raise, the question is always complicated by the defaulting party's failure to respond. *Thompson*, 2017 WL 3634096, at *2. However, accepting the Complaint's liability allegations as true, the Court finds that Plaintiff has stated a claim and Defendant lacks a meritorious defense at least with respect to Count I, Plaintiff's breach of contract claim.[6] Under New Jersey law, to state a claim for breach of contract, a plaintiff

---

[6] The Court limits its analysis to Count I, Plaintiff's breach of contract claim, because the Court construes the other six claims as duplicative and belt-and-suspenders pleading rather than separately cognizable legal claims. For example, Counts II and III allege implied contracts (in law and in fact, respectively), which "may not be found if there is an express contract on the same subject," as is the case here. *In re Penn Cent. Transp. Co.*, 831 F.2d 1221, 1230 (3d Cir. 1987). Similarly, Count IV, Plaintiff's outstanding book account claim, is effectively identical to its breach of contract claim, the only difference being that for New Jersey law book account claims, "the amount owed for services rendered can be proved by a statement of account." *CPS MedManagement LLC v. Bergen Reg'l Med. Ctr., L.P.*, 940 F. Supp. 2d 141, 151–52 (D.N.J. 2013). As for Count V, Plaintiff's unjust enrichment claim, while Plaintiff was entitled to plead that claim in the alternative to its breach of contract claim, it could not succeed on both. *E.g.*, *Durr Mech. Constr., Inc. v. PSEG Fossil, LLC*, 516 F. Supp. 3d 407, 416–17 (D.N.J. 2021). The same is true as to Count VI, Plaintiff's promise-to-pay (or promissory estoppel) claim. *Corps Logistics, LLC v. Dutil*, No. 20-06683, 2021 WL 795198, at *10 (D.N.J. Feb. 28, 2021) ("[B]reach of contract and promissory estoppel may be alternatively pled. Nonetheless, promissory estoppel cannot be enforced when a court finds that the parties have entered into an enforceable contract." (citations omitted)). Finally, as to Count VI, Plaintiff's Prompt Payment Act claim, the statute appears inapplicable because it only controls when, unlike here, (Exh. G, ECF No. 96-1), the parties to a contract "have not otherwise agreed to terms of payment in writing." *Nan, Inc. v. Wood Env't & Infrastructure Sols., Inc.*, No. 21-00707, 2022 WL 317084, at *5 (D.N.J. Feb. 2, 2022) (quoting N.J. STAT. ANN. § 2A:30A-2(b)). Accordingly, the Court only analyzes Plaintiff's breach of contract claim completely for purposes of default judgment.

"must allege (1) a contract between the parties; (2) a breach of that contract; (3) damages flowing therefrom; and (4) that the party stating the claim performed its own contractual obligations." *Frederico v. Home Depot*, 507 F.3d 188, 203 (3d Cir. 2007).[7] Plaintiff's allegations meet all four elements. It alleges that the parties entered into a contract—or, more accurately, two contracts—pursuant to which Plaintiff would provide interior design, architectural, and engineering services to Defendant and invoice Defendant for that work. (Compl., ECF No. 1-1, ¶¶ 3–5; Exh. G, ECF No. 96-1). Defendant was required to pay those invoices within thirty days or begin to accrue interest at the rate of two percent per month. (Compl., ECF No. 1-1, ¶ 6). Plaintiff performed its contracted services, but numerous invoices went unpaid. (Compl., ECF No. 1-1, ¶ 7). Defendant therefore breached the parties' contracts, causing damages to Plaintiff, which had performed its end of the deal. This is a casebook contract breach claim, to which Defendant has no meritorious defenses. Accordingly, the first factor weighs in favor of granting Plaintiff default judgment.

*Second*, Plaintiff has plainly been prejudiced by Defendant's failure to proceed in its own defense. Having been "prevented from prosecuting [its] case, engaging in discovery, and seeking relief in the normal fashion," Plaintiff will have "no other means of seeking damages for the harm caused by Defendant" without the Court's granting a default judgment. *Thompson*, 2017 WL

---

[7] At every stage, Plaintiff has pled and prosecuted this case under New Jersey law. The Court acknowledges that in its Answer—which is no longer operative after being struck by the Court, (ECF No. 89)—Defendant raised a seemingly boilerplate affirmative defense that New Jersey law does not apply and that under the applicable law, it was not liable. (Ans., ECF No. 32 at 2). However, before its default, Defendant never identified which state's law it believed applied. Because the Answer is no longer operative and lacking any alternative suggestion, the Court will not conduct a sprawling choice-of-law analysis as to every state whose laws could possibly control this case. Instead, the Court will interpret Plaintiff's claims as they have been pled: under New Jersey law. This approach appears particularly sensible because under New Jersey's choice-of-law rules—which would apply here, *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)—the chances of an actual conflict arising between states as to a standard breach of contract claim seems slim, meaning New Jersey law would apply regardless. *See, e.g., Wade v. Pa. Higher Educ. Assistance Agency*, No. 21-11595, 2022 WL 1115275, at *2 (D.N.J. Apr. 14, 2022).

3634096, at *2 (quoting first *Teamsters Pension Fund of Phila. & Vicinity v. Am. Helper, Inc.*, No. 11-00624, 2011 WL 4729023, at *4 (D.N.J. Oct. 5, 2011) and then *Gowan v. Cont'l Airlines, Inc.*, No. 10-01858, 2012 WL 2838924, at *2 (D.N.J. July 9, 2012)). This, too, weighs in favor of granting default judgment.

*Finally*, Defendant is unquestionably culpable for its failure to defend in this case. "Absent any evidence to the contrary, 'the Defendant's failure to answer evinces the Defendant's culpability in [the] default.'" *Thompson*, 2017 WL 3634096, at *2 (quoting *Teamsters Pension Fund*, 2011 WL 4729023, at *4). Defendant was fully apprised of the potential ramifications of its failure to retain counsel after Magistrate Judge Skahill's hearing and Order. (ECF No. 79). Despite this warning, it still has chosen not to take any action thereafter. (ECF No. 89). It is culpable for this deliberate choice and thus must face the consequences thereof. This further confirms that default judgment is appropriate.

Having determined that Plaintiff is entitled to default judgment, only one question remains: for what amount of damages? Unfortunately, the answer remains unclear. The Court need not accept Plaintiff's allegations as to damages as true under Rule 55(b), *DirecTV*, 2006 WL 680533, at *1 (citing WRIGHT, MILLER & KANE, *supra*, § 2688, at 58–59), and it may order or permit a plaintiff seeking default judgment to provide additional evidence in support of its allegations if the Court finds evidentiary support to be lacking. *Thompson*, 2017 WL 3634096, at *1 (citing *Doe v. Simone*, No. 12-05825, 2013 WL 3772532, at *2 (D.N.J. July 17, 2013)). In support of its Motion, Plaintiff has submitted an Affidavit of Counsel, (ECF No. 96-1), which purports to certify the amount of damages and interest that Defendant owes Plaintiff. Attached to this Affidavit is an account statement, which appears to have been prepared by one of Plaintiff's operations executives during the course of litigation and is addressed to Plaintiff's counsel. (Exh. H, ECF No. 96-1).

8

These supporting documents present at least two problems. First, how does Plaintiff's counsel have firsthand knowledge of the contracts, unpaid invoices, and damages such that the Court could rely on his certification? It is inappropriate for counsel to certify as to matters of which he could not have personal knowledge. L. CIV. R. 7.2(a) ("Affidavits, declarations, certifications and other documents of the type referenced in 28 U.S.C. § 1746 shall be restricted to statements of fact within the personal knowledge of the signatory."); *see also Cannon v. Cherry Hill Toyota, Inc.*, 190 F.R.D. 147, 158 (D.N.J. 1999) ("[T]he Court must disregard the contents of an improper certification . . . ."). Further, it is more appropriate to have an actual representative of the company attest to such facts. Second, the accounting document prepared for counsel—setting aside any attendant attorney-client privilege issues—is not evidence itself of the damages for which Defendant is liable. Rather, it would be the underlying invoices that the statement summarizes that would evidence the damages Defendant owes sufficient for the Court to ascertain the appropriate amount of damages and the entry of default judgment. Without a proper certification or the actual unpaid invoices, the Court lacks the necessary factual evidence to determine the amount of damages for which it should enter judgment.

In light of these issues, although the Court grants Plaintiff's Motion, judgment shall not issue until the Plaintiff submits an appropriate certification from a corporate representative, supported by copies of the actual unpaid invoices for which Defendant is responsible.

## CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Default Judgment is **GRANTED**. An appropriate Order accompanies this Opinion.

**CHRISTINE P. O'HEARN**
**United States District Judge**